UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CAROL A. LEHMAN,

                    Plaintiff,

          -against-

KILOLO KIJAKAZI,[1]
    Acting Commissioner of Social Security,

                    Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
19-CV-1952 (JMA)

FILED
CLERK
9:45 am, Sep 30, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Stacey Rinaldi Guzman
Stanton & Guzman, LLP
801 S. Broadway, Ste 2nd Floor
Hicksville, NY 11801
    *Attorney for Plaintiff*

Mary M. Dickman
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

      In this appeal, brought pursuant to the Social Security Act, 42 U.S.C. § 405 et seq. (the "Act"), plaintiff Carol A. Lehman ("Plaintiff") challenges the final determination by the Commissioner of the Social Security Administration (the "Commissioner") that she was not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act. Pending before the Court are the parties' cross motions for judgment on the pleadings,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

1

pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the Court **GRANTS** the Commissioner's motion and **DENIES** Plaintiff's motion.

## I. BACKGROUND

Plaintiff was 54 years old as of June 30, 2018, the date she was last insured for disability benefits. (Tr. 62, 157, 190.) She last worked, in December 2014, as a part-time teller at a credit union, which she performed at substantial gainful activity levels from 2012 to 2014. (Tr. 78-79, 173-74, 221.) Prior to that, Plaintiff worked for different employers as an office administrator. (Tr. 79-82, 221.) Plaintiff stopped working after she tripped on a mat and fell onto a desk while at work, injuring her chin, left shoulder, knees, and neck. (Tr. 82-83.) Plaintiff applied for Social Security Disability benefits on June 11, 2015, alleging disability as of December 10, 2014 due to asthma, thyroid problems, a frozen left shoulder, a torn left rotator cuff, and a torn meniscus of her left knee. (Tr. 60, 96, 157-58, 179-89.) After the SSA denied her application, Plaintiff requested a hearing. On October 19, 2017, she appeared before ALJ Patrick Kilgannon. (Tr. 73-95.) Dale Pasculli, a vocational expert ("VE"), also testified. (Id.) ALJ Kilgannon ultimately denied Plaintiff's claim, finding that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, which included lifting up to twenty pounds occasionally; lifting or carrying up to ten pounds frequently; spending approximately six hours in an eight-hour workday standing and/or walking and approximately six hours sitting, with normal breaks; never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching and/or crawling; occasionally reaching overhead with the left non-dominant upper extremity; and never being around pulmonary irritants such as fumes, odors, dust and/or gases or being in poorly ventilated areas. The ALJ found Plaintiff was able to return to her past relevant work as a manager (sedentary in exertional nature) and teller (light in exertional nature), "as

2

actually and generally performed." (Tr. 63-67.) The Appeals Council denied review on February 12, 2019. (Tr. 1-5.) This appeal follows.

## II. DISCUSSION

Plaintiff raises three specific arguments in support of remand: first, that the ALJ failed to follow the treating physician rule with respect to her orthopedist, Dr. Henry Marano; second, the ALJ failed to properly weigh the opinion of the consultative examiner, Dr. Syeda Asad; and third, the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. As explained below, the Court finds these arguments meritless.

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)). In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

A. **Treating Physician**

Plaintiff argues that the ALJ failed to follow the treating physician rule when he assigned the opinion of her orthopedist, Dr. Marano, little weight.[2] (ECF No. 9 at 9-12.) On November 11, 2014, Plaintiff tripped on a mat and fell on a desk while at work and went to the emergency room. (Tr. 359.) Two days later, on November 13, 2014, Plaintiff was first treated by Dr. Marano. (Tr. 254-57, 346-49.) On April 15, 2015, Dr. Marano performed arthroscopic surgery on Plaintiff's left shoulder. (Tr. 270, 387-440.) Plaintiff continued to be treated by Dr. Marano through June 2017. (Tr. 650-52.) In August 2017, Dr. Marano opined that during the course of an eight-hour workday, Plaintiff could sit less than two hours, stand/walk less than two hours, and lift/carry no measurable weights. (Tr. 654-58.) Dr. Marano also found that Plaintiff could never twist, stoop, crouch, climb ladders or stairs, and if employed would be absent four or more days per month. (Id.) Dr. Marano diagnosed a left rotator cuff sprain, adhesive capsulitis of the left shoulder, and left knee arthritis/meniscal tear. (Id.)

The ALJ explained that he afforded Dr. Marano's opinion little weight because "the said level of severity is not corroborated by Dr. Marano's own treatment notes nor the record as a whole." (Tr. 66.) Specifically, the ALJ explained that "in a series of treatment notes spanning the period of December 2014 through June 2017," Dr. Marano's "repeat findings mainly consisted of decreased range of motion of left shoulder, positive impingement testing and tenderness and dec[r]eased range of left knee motion and tenderness." (Id.) The ALJ stated that these treatment notes "are inconsistent with [Dr. Marano's] finding of total disability." (Id.)

Plaintiff contends that the ALJ erred in weighing the opinion of Dr. Marano because he did not consider the factors listed in 20 C.F.R. §404.1527. (ECF No. 9 at 10.) Specifically, Plaintiff

---

[2] Plaintiff does not argue that the ALJ erred when he assigned little weight to the opinion of Plaintiff's general practitioner, Dr. Burmeister.

4

argues that the ALJ did not consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. (Id.) Plaintiff also argues that the ALJ erred by not subpoenaing supplemental information from Dr. Marano. (ECF No. 9 at 11.)

The Court disagrees. As set forth below, the ALJ properly applied the treating physician rule: his determination to accord "little weight" to Dr. Marano's opinion was supported by substantial evidence. Furthermore, the ALJ was not required to subpoena additional information from Dr. Marano.

1. Substantial Evidence Supports the ALJ's Finding

The treating physician rule governs an ALJ's decision "regarding the weight to be accorded to each medical opinion and how to reconcile conflicting medical opinions." Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 226 (E.D.N.Y. 2021) (citing 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)).[3] Pursuant to this rule, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" is given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting 20 C.F.R. § 404.1527) (internal quotation marks omitted). However, "[w]hile the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). When a treating physician's opinion

---

[3] For claims filed on or after March 27, 2017, the Social Security Administration adopted new regulations that change the standards applicable to the review of medical opinion evidence. See 20 C.F.R. § 404.1520c. Because Plaintiff filed her claim before the effective date of the new rule, the Court applies the regulations that were in effect at the time of the filing.

5

is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the SSA regulations. Id.; see also 20 C.F.R. § 404.1527(c). These same factors are considered when evaluating other medical opinion evidence as well. In weighing an opinion from a treating physician, an ALJ must consider various factors, including: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 128 (internal quotations and alterations omitted). However, even if an ALJ fails to apply these factors "explicitly" in a decision, the ALJ's decision should be affirmed if a reviewing court conducts "a searching review of the record" and finds "that the substance of the treating physician rule was not traversed." Danza v. Comm'r of Soc. Sec., No. 18-cv-6841, 2019 WL 6033097, at *2 (E.D.N.Y. Nov. 14, 2019) (citing Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019)).

In evaluating Dr. Marano's opinion, the ALJ provided appropriate reasoning for according it little weight. Despite Plaintiff's argument to the contrary, the ALJ did consider the factors outlined in 20 C.F.R. § 404.1527(c). The ALJ explicitly noted that Dr. Marano had been Plaintiff's treating orthopedist from December 2014 through 2017. (Tr. 66.) The ALJ considered Dr. Marano's treatment notes throughout this time period, and considered the opinion's consistency with Dr. Marano's own treatment notes and the record as a whole. (Id.)

Furthermore, substantial evidence supports the ALJ's determination that Dr. Marano opinion should be assigned little weight. "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including

6

contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (internal quotation marks and citation omitted).  The Commissioner's findings "as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and therefore, the relevant question is not whether substantial evidence supports plaintiff's position, but whether "substantial evidence supports the ALJ's decision." Zacharopoulos, 516 F. Supp. 3d at 220 (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).

Here, substantial evidence supports the ALJ's decision.  First, Dr. Marano's own treatment notes do not support his 2017 opinion that Plaintiff could sit less than two hours, stand/walk less than two hours, and lift/carry no measurable weights but, rather, support the ALJ's RFC finding. While Dr. Marano indeed opined that Plaintiff had a left rotator cuff sprain, adhesive capsulitis of the left shoulder, and left knee arthritis/meniscal, the ALJ properly explained that Dr. Marano's treatment notes do not support the level of severity described in his 2017 opinion.  Instead, treatment notes from 2014 through 2017 contained "repeat findings [that] mainly consisted of decreased range of motion of left shoulder, positive impingement testing and tenderness and dec[r]eased range of left knee motion and tenderness." (Id.)  For example, with regard to Plaintiff's left knee, Dr. Marano prescribed a brace, advised her to go to physical therapy, and stated that it had intact muscles and tendons, only a "slight linear horizontal tear of the lateral meniscal body segment," and "[m]ild cartilage wear." (Tr. 647-48, 573-84, 683, 677.)  The treatment notes also show that Plaintiff told Dr. Marano that physical therapy was helpful in improving her strength and range of motion.  (Tr. 682.)  With regard to Plaintiff's left shoulder, the treatment notes repeatedly state that Plaintiff had tenderness and decreased range of motion.  (Tr. 652, 667, 669, 690.)

The ALJ explained that Dr. Marano's August 2017 opinion is also not supported by the other evidence in the record. The opinion of consulting examiner, Dr. Asad, conflicts with Dr. Marano's opinion and supports the ALJ's RFC finding.  Dr. Asad opined that Plaintiff had "mild limitations for lifting, carrying or pushing any objects from the hand"; had "no limitations for squatting, kneeling, bending, walking or standing for long periods of time"; and "should avoid chemicals, fragrances, and other respiratory irritants due to asthma." (Tr. 66-67, 536.) Dr. Asad's examination was "largely unremarkable" finding that Plaintiff had a normal gait and stance, the ability to walk on heels and toes, full ranges of motion in the cervical and lumbar spine as well as her hips, knees, and ankles bilaterally, minimal left shoulder pain complaints upon range of motion movements, and deep tendon reflexes that were equal and physiologic in all extremities. (Tr. 66, 537-39.)  Where genuine conflicting evidence exists, the ALJ may exercise discretion in resolving the conflict.  Veino, 312 F.3d at 588; Schaal, 134 F.3d at 504.

The ALJ also considered Plaintiff's MRI records and found that they did not support Dr. Marano's findings.  An MRI of her left knee in 2016 showed mild degenerative changes and in 2017 an MRI showed a slight linear tear. (Tr. 65.)  The ALJ noted that 2014 MRI records of her left shoulder revealed a tearing of the rotator cuff tendons, bursitis, arthrosis, and mild stenosis of the subacromial space.  However, afterward Plaintiff underwent an arthroscopy on her left shoulder in April 2015 and experienced improvement.  (Id.)  The ALJ also reviewed MRI records of her cervical spine which showed impingement and borderline stenosis.  (Id.)

The ALJ took into account Plaintiff's own testimony that with regard to her knee, that she has a mild meniscal tear that results in instability and her kneecap popping out. (Tr. 64.)  With regard to her shoulder, Plaintiff testified that she has had some improvement following her surgery, although, she still cannot raise her left shoulder above shoulder height.  (Id.)  She testified that her

8

shoulder was "better" but "not perfect" and that she had been advised that there was not much more she could do for her shoulder except physical therapy if she experienced pain. (Id. at 84.) Plaintiff also testified that in June 2015, she began experiencing lower back pain and that she takes pain medication and goes to physical therapy for this. (Id. at 86)

Collectively, this evidence shows that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

For these reasons, the Court finds that the ALJ provided good reasons for the weight assigned to Dr. Marano's opinion. Additionally, "a 'searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed.'" Guerra v. Saul, 778 F. App'x 75, 77 (2d Cir. 2019) (quoting Estrella, 925 F.3d at 95-96). The Court therefore finds that the ALJ's did not err in deciding to accord little weight to Plaintiff's treating physician.

  2. Duty to Develop the Record

Plaintiff also argues that "if the Court were to accept that the record does not contain sufficient clinical evidence to support Dr. Marano's diagnoses and opinions regarding disability and residual functional capacity, which were that the Plaintiff was limited to less than a full range of sedentary work, the record does not reflect that the ALJ ever subpoenaed the necessary supplemental information, nor did he subpoena the doctor himself." (ECF No. 9 at 11.) This argument is meritless. There is no suggestion in the record that any of Dr. Marano's treatment notes or records are missing or lacking in any respect. Rather, the ALJ found that Dr. Marano's opinion was inconsistent with the record as a whole, including his own treatment notes. (Tr. 66.) Plaintiff fails to explain what additional information she believes the ALJ should have subpoenaed but only argues vaguely that the ALJ should have subpoenaed the "necessary supplemental information."

9

The ALJ has no obligation to recontact a consultative examiner, state agency medical consultant, or treating physicians. The regulations state only that where the adjudicator believes the evidence is inadequate to make a disability determination, the decision of whether to recontact a treating source is discretionary. See 20 C.F.R. § 404.1520b(b). The record does not indicate that the evidence is inadequate to make an RFC determination, and even if the evidence was inadequate, it was in the ALJ's discretion whether to recontact a treating physician.

An ALJ has an affirmative duty to develop the record where there are deficiencies and "clear gaps in the administrative record." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). However, "the flip-side of this same proposition" is that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Petrie, 412 F. App'x at 406 (quoting Rosa, 168 F.3d at 79 n.5). Here, the ALJ did not fail to develop the record, which contained medical opinions and treatment notes from multiple medical professionals. Specially, the record contains treatment notes from Dr. Marano from 2014 through 2017 and an assessment from 2017. Plaintiff fails to state in what way these records were deficient. Under these circumstances, the ALJ was not required to recontact Dr. Marano.

**B. Consultative Examiner**

Next, Plaintiff argues that the ALJ failed to properly weigh the opinion of the consultative examiner, Dr. Asad. Plaintiff argues that the ALJ should not have assigned "good weight" to Dr. Asad's opinion for two reasons: first, Dr. Asad is an internist, not an orthopedist; and second, the record does not state whether Dr. Asad reviewed Plaintiff's prior medical records. (Pl. Br. at 13-14.)

10

The ALJ assigned "good weight" to the August 2015 opinion of consultative examiner Dr. Asad. Dr. Asad opined that Plaintiff had "mild limitations for lifting, carrying or pushing any objects from the hand"; had "no limitations for squatting, kneeling, bending, walking or standing for long periods of time"; and "should avoid chemicals, fragrances, and other respiratory irritants due to asthma." (Tr. 66-67, 539.) Dr. Asad's examination was "largely unremarkable" finding that Plaintiff had a normal gait and stance, the ability to walk on heels and toes, full ranges of motion in the cervical and lumbar spine as well as her hips, knees, and ankles bilaterally, minimal left shoulder pain complaints upon range of motion movements, and deep tendon reflexes that were equal and physiologic in all extremities. (Tr. 66, 537-39.) Dr. Asad also noted that Plaintiff reported that she cooks two to three times per week, does light cleaning every day, does laundry twice a week, shops once a week, and showers and dresses by herself every day. (Tr. 66.) The ALJ explained that he gave Dr. Asad's opinion "good weight" because it was consistent with the complete examination that he performed. (Tr. 67.)

The opinion of a consultative examiner may constitute substantial evidence. See Netter v. Astrue, 272 Fed. Appx. 54, 55-56 (2d Cir. 2008) (report of a consultative physician may override opinion of a treating physician, provided it is supported by substantial evidence in the record); Petrie, 412 F. App'x at 405 (medical opinions of consultative examining physicians can constitute substantial evidence). Where genuine conflicting evidence exists, the ALJ may exercise discretion in resolving the conflict. Veino, 312 F.3d at 588 (2d Cir. 2002); Schaal, 134 F.3d at 504. Further, an ALJ may consider and "choose between properly submitted medical opinions." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). Here, Dr. Asad's opinion is consistent with the RFC, which states that Plaintiff "must avoid pulmonary irritants" and that Plaintiff can occasionally reach overhead "with the left non-dominant upper extremity." (Tr. 63.)

Plaintiff argues that the ALJ erred by giving Dr. Asad's opinion good weight because he is an internist and not an orthopedist. (ECF No. 9 at 13.) However, "a doctor's specialization is only one of several factors that an ALJ must consider when determining the weight that an expert's medical opinion merits." Gillespie v. Comm'r of Soc. Sec., No. 19-CV-02907, 2020 WL 4451925, at *2 (E.D.N.Y. Aug. 3, 2020) (citing to 20 C.F.R. § 404.1527(c)(5)) (finding that the ALJ was not obligated to reject the medical opinions of two consultative examiners "simply because they were not neuromuscular or musculoskeletal specialists"); Wright v. Berryhill, 687 F. App'x 45, 48 (2d Cir. 2017) (finding that it was not reversible error for the ALJ to give great weight to the opinion of an examining doctor who specialized in pediatrics).

Plaintiff also argues that Dr. Asad's opinion should not have been given good weight because he did not review Plaintiff's prior medical records. The regulations do require that a consulting physician be provided with "any necessary background information about [a claimant's] condition." 20 C.F.R. § 416.917; see also 20 C.F.R. § 404.1517. However, Courts in this Circuit hold that this language does not require a consultative examiner to be provided with claimant's medical records. See Johnson v. Colvin, No. 13-CV-3745, 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015), aff'd sub nom. Johnson v. Comm'r of Soc. Sec., 669 F. App'x 580 (2d Cir. 2016) ("this language does not amount to a requirement that every consulting physician be provided with all of a claimant's medical records and history (much less a requirement that the physician report that she viewed every, or any, document in the record)"); Genovese v. Astrue, No. 11–CV–02054, 2012 WL 4960355, at *18 (E.D.N.Y. Oct. 17, 2012) ("there is no clear requirement under the Regulations that a consultative physician must be given the opportunity to view a claimant's entire medical record. The SSA's statement that an examiner must be given 'necessary background

12

information about [a claimant's] condition,' 20 C.F.R. §§ 404.1517, 416.917, does not mandate that 'the examiner must be provided with plaintiff's medical records,' as plaintiff asserts it does.").

Here, in addition to performing an examination, Dr. Asad's report establishes that he obtained significant background information about Plaintiff's medical history and provided a detailed description of Plaintiff's longitudinal history (including Plaintiff's subjective complaints, surgical history, medical treatment, and past diagnoses), her medications at the time of examination, her functioning and daily activities at the time of examination, and her drug and alcohol history. (Tr. 536-40.) The report also states that Dr. Asad reviewed a knee x-ray and shoulder x-ray. (Tr. 539, 541-42.)

Accordingly, the Court finds that the ALJ properly weighed the opinion of Dr. Asad.

## C. **Plaintiff's Subjective Complaints of Pain**

Finally, Plaintiff argues that the ALJ failed to properly consider her subjective complaints of pain. (ECF No. 9 at 15-17.) Plaintiff argues that "[a]lthough the ALJ does not specifically articulate that Plaintiff's testimony was incredible," he did state that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records." Plaintiff argues that "the ALJ failed to set forth with any specificity as to why he found the Plaintiff's complaints of pain and limitations to be incredible or how the record does not support the Plaintiff's complaints" and, therefore, her case should be remanded. (Id.) The Court disagrees.

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco,

13

2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)).  The ALJ has the discretion to evaluate and ultimately not credit a plaintiff's testimony about the severity of her pain and functional limitations.  See Burnette v. Colvin, 564 F. App'x 20, 605, 609 (2d Cir. 2008) (summary order).

Here, the ALJ followed the two-step inquiry outlined in the regulations and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records." (Tr. 67.)  The ALJ reasonably weighed the applicable evidence—reviewing the medical records, the report of the consultative examiner, and specifically, considering Plaintiff's testimony and statements contained in the record.  The ALJ explicitly addressed Plaintiff's testimony about her pain, including her complaints of pain in her left shoulder and left knee.  (Tr. 64-65 (the ALJ noted Plaintiff's testimony that "although she has had some improvement, she still is unable to raise her left shoulder above shoulder height."); Tr. 83-90 (the ALJ recounted Plaintiff's testimony of "instability and her kneecap popping out.")).  The ALJ also considered Plaintiff's testimony about performing household chores.  (Tr. 65.)  The ALJ weighed the evidence contained in the medical records including MRIs, medical records from Plaintiff's treating physicians, Dr. Burmeister and Dr. Marano, and the report of the consultative examiner.  (Tr. 65-67.)

Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints in determining that Plaintiff retained the ability to perform light work with certain limitations.

14

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for judgment on the pleadings and **GRANTS** the Commissioner's cross-motion.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  September 30, 2021
            Central Islip, New York

                                                         /s/ (JMA)                                   
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE

15